**WO**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Joao Cornelio,

               Plaintiff,

vs.

Alfa Wassermann,

               Defendant.

Case No. CV-10-2023-PHX-GMS

**ORDER**

Pending before the Court is Defendant's Motion for Summary Judgment.  (Doc. 47).  For the following reasons, the Court grants the motion.

## BACKGROUND

Though several of the following facts are still in dispute, the Court views them in the light most favorable to the nonmoving party on a motion for summary judgment.  In March 2007, Plaintiff Joao "Pele" Cornelio ("Plaintiff") was hired as a Field Service Engineer ("FSE") by Alfa Wasserman Professional Services, LLC ("Alfa Wassermann").   Alfa Wasserman provides maintenance and repair services for medical diagnostic equipment.  (Doc. 47 at 1).  Michael Beaubien, National Sales Manager for Alfa Wassermann, made the decision to hire Plaintiff in March 2007.  (Doc. 47 at 2).  During the interview process, Beaubien learned Plaintiff was an immigrant of African descent.  (Beaubien Dep. 15:24–16:1).

As an FSE assigned to the Southwest territory, Plaintiff was based in Phoenix and repaired and maintained diagnostic medical equipment in clinics throughout his territory. (Doc. 47 at 2).   He was also responsible for completing the requisite paperwork as mandated per company policy.  (*Id.*)

On January 8, 2008, Plaintiff was issued a probationary notice by Beaubien. (Doc. 47 at 4).  The notice cited "lack of timely paperwork" as the reason for placing Plaintiff on probation.  (*Id.*)  Two other Caucasian employees, Rich Hanzel ("Hanzel") and Harold Robinson ("Robinson"), were concurrently placed on probation, by Beaubien, for the same reason.  (*Id.*)  Soon after, Plaintiff, Hanzel and Robinson were sent to New Jersey for advanced paperwork training.  (*Id.*)  On February 25, 2008, Plaintiff was the only FSE on probation with over five calls not closed from the week before.  (Doc. 47 at 7).   On March 19, 2008, Alfa Wassermann had to write off $2,460.08 of Plaintiff's inventory for the calendar year (the highest write-off that year). (*Id.*)  The same day, Beaubien sent an email to human resources requesting approval to terminate Plaintiff's employment for inadequate paperwork, inventory write offs, and possible regulatory violations.  (Doc. 47 at 8).   The termination was approved and Plaintiff's employment with Alfa Wassermann ended on March 26, 2008.  (*Id.*)  Plaintiff then filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race and national origin discrimination based on Title VII of the Civil Rights Act of 1964 ("Title VII").  The EEOC issued Plaintiff a right-to-sue letter on November 5, 2009.  The instant action ensued.

## ANALYSIS

### I.    Legal Standard

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Then, the burden is on the nonmoving party to establish a genuine issue of material fact.  *Id.*, at 322-23.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## II.   Plaintiff Has Failed to Comply with Required Procedural Rules.

Defendants urge the Court to dismiss Plaintiff's case for failure to comply with Local Rule 56.1[1] and Local Rule 7.2(e).[2]  Plaintiff has failed to file a statement of facts with his response and has exceeded the page limit by eight pages.

While *pro se* litigants are bound by "the same rules of procedure that govern other litigants," *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir.1987), courts have a duty to liberally construe the pleadings of *pro se* litigants.  *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  Though the Court will not strike Plaintiff's response for procedural flaws, his failure to follow the pertinent rules has resulted in a narrative consisting of many self-serving statements and hearsay, instead of identification of admissible testimony that raise issues of material fact.  Plaintiff's response is therefore insufficient to defeat Defendant's Motion for Summary Judgment.  *See e.g.  Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir.2002) (mentioning "[t]his court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving testimony'") (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)).

A *pro se* nonmoving party must still "present some significant probative evidence tending to support the complaint" to survive summary judgment.  *Franklin v. Murphy*, 745 F.2d 1221, 1235 (9th Cir.1984) (citation and internal quotations omitted).  Neither "uncorroborated and self-serving testimony" nor hearsay statements serve to provide

---

[1] Requires opposing party in a summary judgment proceeding to submit a response to movant's statement of facts and to cite to specific admissible portions of the record.

[2] Limits a summary judgment response to seventeen pages.

such evidence.  *See e.g.*, *Kennedy*, 90 F.3d at 1481 (uncorroborated and self-serving testimony); *Harkins Amusement Enterprises, Inc. v. Gen. Cinema Corp.*, 850 F.2d 477, 490 (9th Cir. 1988) (hearsay) (citations omitted).

## III.   Analysis

Plaintiff claims he was terminated illegally because of his race and national origin and seeks to recover damages pursuant to Title VII of the Civil Rights Act of 1964.  42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer... to discharge any individual... because of such individual's race, color, religion, sex, or national origin.").

### A.   Same-Actor Inference

Michael Beaubien was responsible for hiring and firing Plaintiff within a timeframe of a little more than one year.  (Doc. 47 at 16).  The Ninth Circuit has concluded that, "where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive." *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270–71 (9th Cir. 1996).  The same-actor inference is a "strong inference" that a court must take into account on a summary judgment motion. *Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1098 (9th Cir. 2005).  Plaintiff can defeat the same actor inference only with an "extraordinarily strong showing of discrimination." *Id.*

Plaintiff's attempt to provide evidence of discrimination is limited to the actions of Ward, his lead FSE.  Ward allegedly called Plaintiff a "gang banger," a "nigger," and harassed Plaintiff weekly over the phone.  Nevertheless, presenting evidence of Ward's discriminatory bias does not suffice to show discrimination in the employment action at issue.

Plaintiff appears to argue Ward's discriminatory bias should be imputed to the decisions that led to his termination.  "[E]ven if the biased subordinate was not the principal decisionmaker, the biased subordinate's [] motive will be imputed to the employer if the subordinate influenced, affected, or was involved in the adverse employment decision." *Poland v. Chertoff*, 494 F.3d 1174, 1183 (9th Cir. 2007)

(citations omitted).    However, a plaintiff must "prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision." *Id.*, at 1182–83 (citations omitted); *see De Horney v. Bank of America Nat'l. Trust & Sav. Assoc.*, 879 F.2d 459, 467 (9th Cir. 1989) (affirming summary judgment where there was no evidence that an employee who made a racist remark was involved in the decision to terminate).   Plaintiff alleges that "[t]he hiring actor had an influencing assistant named Ed Ward[,] who mis[led] and/or collaborated with the firing actor about [P]laintiff's status and credentials on the job." (Doc. 53 at 24).   However, this uncorroborated and self-serving statement, made without foundation, does not constitute admissible evidence contradicting Beaubien's testimony that his decision was made independently of Ward's influence.   (Beaubien Dep. 230:23–231:3).   *See generally*, *Jernigan v. Richard*, CV-08-2332-PHX-GMS, 2012 WL 79262 *20 (D. Ariz. Jan. 11, 2012) (citing *Harkins Amusement Enterprises*, 850 F.2d at 490 (recognizing "hearsay evidence is inadmissible and may not be considered by this court on review of a summary judgment motion")) (citations omitted).   In fact, even Plaintiff's testimony appears to recognize Beaubien made the decision independently.   SOF 83.

Plaintiff has failed to present any showing of discrimination by Beaubien, and any showing of Ward's discriminatory bias–absent some evidence showing it affected Beaubien's decision to terminate Plaintiff–is unavailing.   Because Plaintiff does not present direct evidence of discrimination, he must establish his case under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

### B.    Burden-Shifting Analysis

If a plaintiff cannot show direct evidence of discrimination, he may still establish a prima facie case of discrimination under the *McDonnell* framework by showing: "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subjected to an adverse employment action; and (4) similarly situated [individuals outside of his protected class] were treated more favorably." *Villiarimo*, 281 F.3d at 1062 (citing *McDonnell Douglas*, 411 U.S. at 802).   "If the plaintiff establishes a prima facie case, the burden of production [] then shifts to the employer to articulate some

legitimate, nondiscriminatory reason for the challenged action." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802).  "If the employer does so, the plaintiff must show that the articulated reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.*

### 1.    Plaintiff's Prima Facie Case

Defendant argues Plaintiff fails to establish the second and fourth elements of his prima facie case.  The proof required to establish a prima facie case is "minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).  Plaintiff produced sufficient evidence of his qualifications for the FSE position by showing his past relevant work experience and recommendations.  (Doc. 53, Ex. 3).

However, to meet the fourth requirement, Plaintiff must show that employees outside his protected class were treated more favorably by demonstrating, "at the least, that [he is] similarly situated to those employees in all material respects." *Morgan v. Selig*, 477 F.3d 748, 755 (9th Cir. 2006).  Plaintiff has failed to do so.  "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).  Plaintiff cites the high amount of accounts he was responsible for as evidence suggesting more favorable treatment of colleagues of other races.  (Doc. 53, Ex. 12, 13).  Plaintiff also asserts "Richardson [] could not fix a piece of equipment, [which is why] Plaintiff was constantly in his territory helping him.  In addition, 70.4% [of his paperwork was late.] [But] he was not terminated. . . he was not even given probation, [but] was given a raise." (Doc. 53 at 23).  However, to be similarly situated, Plaintiff must show that FSEs of other races, with both paperwork and inventory control problems to a similar extent as he, were not terminated.  *See Hawn v. Executive Jet Mgmt.*, 615 F.3d 1151, 1158 (9th Cir. 2010) (noting relevant female employees were not similarly situated where female employees' conduct was not unwelcome and did not result in a complaint).  No other FSE had paperwork as deficient as Plaintiff's.  (Doc. 53, Ex. 12).  Further, Plaintiff has not produced evidence suggesting that employees of other races, with similarly severe

inventory control problems, were not terminated.

Even if Plaintiff's testimony demonstrated more favorable treatment of others, Plaintiff fails to present evidence showing that his termination was unlawfully motivated and the stated reasons for his termination were pretextual.

### 2.      Defendant's Nondiscriminatory Reasons

In response to Plaintiff's prima facie case, Alfa Wassermann offered three legitimate non-discriminatory reasons for the adverse employment action: failure to improve timeliness of paperwork submissions, inventory write offs and possible regulatory violations.  (Doc. 47 at 8).  Since the latter was never elaborated upon, the Court will only refer to the first two.

### 3.      Pretext Analysis

Because Defendant provided non-discriminatory reasons for Cornelio's termination, the burden shifts back to Cornelio, who must be "afforded a fair opportunity to show that [the] stated reason for [the challenged action] was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804.  Plaintiff has not met this burden because he failed to proffer specific and substantial circumstantial evidence of pretext.

When relying on circumstantial evidence, a plaintiff can create a genuine issue of fact for trial only by proffering "specific and substantial" evidence of pretext.  *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 658–659 (9th Cir.2002).  Moreover, a plaintiff's uncorroborated testimony alleging pretext is insufficient to persuade the Court "that a discriminatory reason more likely motivated the employer."  *Villiarimo*, 281 F.3d at 1062 (citing *McDonnell Douglas*, 411 U.S. at 802).

Plaintiff claims he did not receive adequate paperwork training and alleges Ward inhibited him from meeting with his mentor Ivan Holden.  (Doc. 53 at 10–11).  However, all FSEs received the same training on paperwork as part of their initial two-month training program.  (Doc. 47 at 12).  Beaubien even provided Plaintiff with advanced training after he was put on probation.  (*Id.*)  Any allegation of being inhibited in developing a relationship with his mentor is uncorroborated.  Plaintiff's perception of having received inadequate training, without more, fails to demonstrate pretext.

Plaintiff also asserts his paperwork was more burdensome compared to other FSEs, because Ward frequently assigned him service calls outside his territory. (Doc 53 at 16).   He claims, "[d]espite being a trainee and having the second highest number of accounts, plaintiff was already helping other FSEs, spending over 35% of his working time away from his territory." (Doc. 53 at 22).   Nonetheless, this statement merely constitutes an excuse for poor paperwork performance that raises no evidence pretext in the termination decision.  Plaintiff also states, "Alfa Wasserman did [not] provide [a] working tool for Plaintiff to perform [paperwork obligations] satisfactorily." (*Id.*) However, absent some evidence suggesting employees outside his protected class were advantageously provided with a "working tool," this allegation is also insufficient to demonstrate pretext.  Though troublesome to Plaintiff, Ward's management decisions and the inefficiencies of Alfa Wassermann's operating systems are not at issue.  *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1285 (9th Cir. 2000) (reasoning "unwise business judgments" do not support an inference of unlawful conduct).

Further, Plaintiff apparently admits to having paperwork deficiencies while at Alfa Wasserman, but insists "fixing equipment is 80% of the job, [and] paperwork is [only] 20%." (Doc. 53 at 11).  Though Plaintiff may have performed effective repairs, he cannot defeat summary judgment by relying on his own self-serving opinion of his job performance.  *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) ("[A]n employee's subjective personal judgments of [his] competence alone do not raise a genuine issue of material fact.") (citation omitted).

Plaintiff also attempts to show that Alfa Wassermann's proffered nondiscriminatory reasons are without credence by stating he "was the only FSE terminated" despite the fact all employees had paperwork problems.  (Doc. 53 at 3).  But showing that all FSEs struggled in completing their paperwork, when none struggled to the same degree as Plaintiff, does not suggest his termination was motivated by discriminatory reasons.  Even if this testimony were admissible, it fails to address the alternative reason for Plaintiff's termination: significant inventory write offs.  Overall, Plaintiff's vague accusations are insufficient to meet the burden-shifting requirements of *McDonnell* and thus cannot withstand summary judgment.  *See Aragon*, 292 F.3d at

658–659 (holding "specific and substantial" evidence is needed to defeat summary judgment).

Though "summary procedures should be used judiciously, particularly in cases involving issues of motivation or intent," *Douglas v. Anderson*, 656 F.2d 528, 535 (9th Cir. 1981), Plaintiff has failed to overcome the same-actor inference, establish the fourth element of his prima facie case, and proffer specific and substantial evidence of pretext.

## CONCLUSION

For the reasons stated above, the Court grants Defendant's Motion for Summary Judgment.

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 47) is granted.  The Clerk of Court is directed to terminate this action.

Dated this 24th day of July, 2012

G. Murray Snow
United States District Judge